```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

JOHN SCHRENKEL and JOHN
GOEDE,

    Plaintiffs,

v.                            Case No:  2:18-cv-382-FtM-29CM

LENDUS, LLC, RPM HOLDINGS I,
LLC, RPM MORTGAGE, INC., and
ERWIN ROBERT HIRT,

    Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Emergency Motion to Enjoin State Court Actions (Doc. #9) filed on June 11, 2018. On June 15, 2018, defendants filed a Memorandum of Law in Opposition to Plaintiffs' Emergency Motion to Enjoin State Court Actions, (Doc. #15), and plaintiffs filed a Motion for Expedited Telephone Conference with Supplemental Memorandum in Support of Motion to Enjoin (Doc. #14), to which defendants objected on June 18, 2018 (Doc. #17). Also before the Court is defendants' Motion for Abstention or Stay of this Action, filed on June 11, 2018. (Doc. #11.) Plaintiffs filed a Memorandum in Opposition to defendants' Motion for Abstention or Stay of this Action on June 25, 2018 (Doc. #31), to which defendants filed a Reply on August 14, 2018 (Doc. #47).

**I.**

**A. The Parties**

Plaintiffs John Schrenkel ("Schrenkel") and John Goede ("Goede") are the principals of JDJ Management, LLC.[1] (Doc. #3, ¶¶ 5, 23.) JDJ Management, LLC owned American Eagle Mortgage Co., LLC ("American Eagle"), a company that originated residential mortgages in the United States. (Id. ¶¶ 23.)

Defendants RPM Mortgage, Inc. and RPM Holdings I, LLC, are divisions of and/or under the control of defendant LendUS, LLC. (Id. ¶¶ 10, 12, 17.) Defendant Erwin Robert Hirt is the chief executive officer of each defendant entity. (Id. ¶ 14.)

**B. The Equity Purchase Agreement and Related Documents**

Defendant RPM Mortgage, Inc. "or its assigns"[2] entered into an Equity Purchase Agreement ("EPA") with JDJ Management, LLC and its principals to purchase American Eagle. (Id. ¶ 26, p. 31.) Pursuant to the EPA, some cash was paid at the time of closing,

---

[1] It appears that there may have been a third principal, David Berry, who is not involved in this litigation. (See Doc. #3, p. 31.)

[2] The Amended Complaint asserts that LendUS entered into the EPA with JDJ Management and its principals for the purchase of American Eagle Mortgage Co., LLC. (Id. ¶ 26.) It appears the Amended Complaint is phrased this way because plaintiffs are collectively referring to LendUS, LLC, RPM Mortgage, Inc., RPM Holdings I, LLC, and American Eagle Mortgage Co., LLC; LendUS controls the other entities; and RPM Mortgage, Inc. allegedly merged with and into LendUS, LLC. (Id. ¶¶ 16-17, p. 121.)

with additional compensation to follow in the form of Earn-Out Payments. (Id. ¶ 28.)

There are various choice of law and forum selection provisions in the EPA and other related agreements entered into between the parties. The EPA contains the following choice of law/forum selection provision:

> 9.7 Governing Law
>
> (a) **This Agreement shall be governed by, and construed in accordance with, the Laws of the State of Delaware applicable to contracts executed in and to be performed in that state. All Actions arising out of or relating to this Agreement shall be heard and determined in the Chancery Court of the State of Delaware or any federal court sitting in the State of Delaware**. Consistent with the preceding sentence, the Parties hereto hereby (i) submit to the exclusive jurisdiction of the Chancery Court in the State of Delaware or any federal court sitting in the State of Delaware for the purpose of any Action arising out of or relating to this Agreement brought by any Party and (ii) irrevocably waive, and agree not to assert by way of motion, defense, or otherwise, in any such Action, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the Action is brought in an inconvenient forum, that the venue of the Action is improper, or that this Agreement or the Contemplated Transactions may not be enforced in or by any of the above-named courts.

(Id. at 66) (emphasis added). "This Agreement" is defined at the beginning of the EPA as

> THIS EQUITY PURCHASE AGREEMENT, dated as of June 30, 2016 . . . by and between on the one hand (1) RPM Mortgage, Inc. a California corporation, or its assigns (collectively the 'Buyer'), and on the other hand (2) The American Eagle Mortgage Co., LLC, an Ohio limited liability company ('<u>AEM</u>' or '<u>Company</u>'), JDJ Management, LLC, a Florida limited liability company (the '<u>*Seller*</u>') and John Goede, John Schrenkel, David Berry (the '<u>*Principal(s)*</u>' and together with the Seller, the '<u>Selling Parties</u>').

(<u>Id.</u> at 31.) The EPA contains a definition of "Ancillary Agreements," which is defined as "the documents, the instruments and agreements to be executed and/or delivered pursuant to this Agreement or any Ancillary Agreement including without limitation instruments and assumption, and employment agreements." (<u>Id.</u> at 68.) The EPA also contains a provision titled "Entire Agreement" which provides:

> This Agreement, including the Disclosure Schedules and Exhibits hereto, and the Ancillary Agreements contain the entire agreement and understanding between the Parties hereto with respect to the subject matter hereof and supersede all prior and contemporaneous agreements, negotiations, correspondence, undertakings and understandings, oral or written, relating to the subject matter including the Letter of Intent, dated as of March 12, 2016, between Seller and Buyer.

(<u>Id.</u> at 67.)

On July 29, 2016, the same parties involved in the EPA[3] entered into an Amendment and Clarification Agreement that clarified the earn-out payments provision. (Id. ¶ 31, pp. 113-20.) The Amendment and Clarification Agreement also stated its effect on the EPA and Ancillary Agreements. (Id. at 115.) It provided:

> SECTION 3. EFFECT ON THE EPA AND ANCILLARY AGREEMENTS. Except as amended herein, the EPA shall continue in full force and effect as originally executed and delivered. Any reference in the EPA to "this Agreement," "hereunder," "hereof," "herein," or words of like import referring to such agreement shall refer to the EPA as amended and clarified by this Agreement.

(Id.) Although the original EPA was subject to Delaware law, the Amendment and Clarification Agreement subjected the entire agreement to California law via the following provision:

> SECTION 6. GOVERNING LAW. This Agreement shall be governed by, and construed in accordance with, the laws of the state of California, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

(Id. at 116.)

The parties entered into a Second Amending Agreement which modified the time schedules of payment of the contingent compensation. (Id. ¶¶ 34-35, pp. 121-23.) The parties to the

---

[3] The Amended Complaint again asserts that the parties to the Amendment and Clarification Agreement were LendUS, American Eagle Mortgage Co., LLC, JDJ Management, LLC, Schrenkel, and Goede. (Id. ¶ 31.)

Second Amending Agreement are listed as "LendUSA, LLC, a Delaware limited liability company (formerly RPM Mortgage, Inc., a California corporation), or its assigns"[4] and American Eagle, JDJ Management, LLC, Goede, and Schrenkel. (Id. at 121.) The Second Amending Agreement contains the same two sections regarding the effect on the EPA and Ancillary Agreements and the Governing Law as the initial Amendment and Clarification Agreement. (Id.) The Amendment and Clarification Agreements did not provide a new forum selection clause. (Id. at 113-23.)

As part of the EPA, Schrenkel and Goede agreed to remain employees of American Eagle and entered into "Non-competition and Non-solicitation Agreements." (Id. ¶¶ 69-70, 73, pp. 161-76.) The Non-competition and Non-solicitation agreements are between either Schrenkel or Goede and RPM Mortgage, Inc., RPM Holdings I, LLC, American Eagle, and "the other Beneficiaries (as hereinafter defined)." (Id. at 161, 169.) The Non-competition and Non-solicitation Agreements contain the following provisions:

> 9. *Governing Law.* This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of Florida and the federal laws of the United States applicable therein.
>
> 10. *Exclusive Jurisdiction.* Each of the parties hereto irrevocably consents to the

---

[4] Pursuant to the Second Amending Agreement, Lend USA, LLC merged into/with RPM Mortgage, Inc. (Id. at 121.) The Complaint asserts that defendant LendUS is identified in this agreement as LendUSA, LLC. (Id. ¶ 34.)

exclusive jurisdiction and venue of any state court in Fort Myers, Florida, or any federal court in Florida in connection with any matter based upon or arising out of this Agreement and the other matters contemplated herein. Each party agrees not to commence any legal proceedings related hereto except in such courts. By execution and delivery of this Agreement, each party hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and to the appellate courts therefrom solely for the purposes of disputes arising under this Agreement and not as a general submission to such jurisdiction or with respect to any other dispute, matter or claim whatsoever. The parties hereto irrevocably consent to the service of process out of any of the aforementioned courts in any such action or proceeding by delivery of copies thereof by overnight courier to the address for such party to which notices are deliverable hereunder. Any such service of process shall be effective upon delivery. Nothing herein shall affect the right to serve process in any other manner permitted by applicable law. The parties hereto hereby waive any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing courts on the basis of (a) any claim that is not personally subject to the jurisdiction of the above-named courts for any reason, or that it or any of its property is immune from the above-described legal process, (b) that such action or proceeding is brought in an inconvenient forum, that venue for the action or proceeding is improper or that this Agreement may not be enforced in or by such courts, or (c) any other defense that would hinder or delay the levy, execution or collection of any amount to which any party hereto is entitled pursuant to any final judgment of any court having jurisdiction.

(Doc. #3, pp. 164, 172; Doc. #9, p. 3.)  The Non-competition and Non-solicitation Agreements define "Agreement" as "THIS NON-COMPETITION AND NON-SOLICITATION AGREEMENT." (Doc. #3, pp. 161, 169.)  The Non-competition and Non-solicitation Agreements also refer to the "Acquisition Agreement," which is defined as the "Equity Purchase Agreement, dated as of the date hereof, by and among RPM, American Eagle Mortgage Co., LLC, an Ohio limited liability company ("AEM"), and the Covenantor."[5] (Id.)

### C. Pending Lawsuits

Disputes arose among the parties regarding the failure to pay the agreed time schedules of contingent compensation, the firing of plaintiffs by defendants, and the alleged breach of the Non-competition and Non-solicitation Agreements.

### 1) Delaware Chancery Court

LendUS filed a lawsuit under seal in a Delaware state court against Schrenkel and Goede.  (Doc. #9, p. 4; Doc. #11, p. 1.)  The initial Delaware complaint alleged a breach of the EPA and breach of fiduciary duty, but did not include any claims based on the Non-competition and Non-solicitation Agreements.  (Doc. #9, p. 4.)  On May 22, 2018, LendUS amended its Delaware complaint to

---

[5] Covenantor is defined as John Goede in his Non-disclosure and Non-solicitation Agreement and as John Schrenkel in his Non-disclosure and Non-solicitation Agreement. (Doc. #3, pp. 161, 169.)

add Everett Financial, Inc. d/b/a Supreme Lending.[6] (Id.) However, after Everett Financial asserted that the Delaware Court lacked personal jurisdiction over it, LendUS withdrew its claims against Everett Financial. (Id. at 5.) On June 5, 2018, LendUS moved to file a second amended complaint asserting claims under the Non-competition and Non-Solicitation Agreements against Schrenkel and Goede. (Id.) Leave to amend was granted, one count was deemed an expedited claim, and motion to dismiss briefing is underway. (Doc. #47, pp. 4-5.)

**2) Florida Lawsuit**

On April 2, 2018, Schrenkel and Goede filed a lawsuit in Florida state court seeking a declaration that the noncompetition agreements are invalid because, among other things, they were induced by fraud. (Doc. #9, p. 3.) On June 1, 2018, defendants removed the matter to this Court on the basis of diversity jurisdiction. (Doc. #2.)

The Amended Complaint asserts the following Florida state law claims: (1) Declaratory Judgment Action under Fla. Stat. § 86.021 by Shrenkel, (2) Declaratory Judgment Action under Fla. Stat. § 86.021 by Goede, (3) Claim for Unpaid Wages under Fla. Stat. § 448.08, (4) Constructive Discharge, (5) Retaliatory Discharge under Florida's Private Whistleblower Act under Fla. Stat. §

---

[6] Everett Financial, Inc. d/b/a Supreme Lending is the current employer of plaintiffs Goede and Schrenkel.

448.102(3), (6) Breach of Contract – Earn Out Provision (California Law), (7) Piercing the Corporate Veil—Alter Ego, (8) Tortious Interference with Contractual Relations, and (9) Claim for Unpaid Wages under Fla. Stat. § 448.08. (Doc. #3.)

**3) Texas Lawsuit**

On June 6, 2018, LendUS brought an action against Scott Everett and Everett Financial in Texas state court. (Doc. #9, p. 5.) LendUS sought a temporary restraining order against the Everett defendants, which was granted. (Id. at 6.) Schrenkel and Goede were not named as parties in the Texas lawsuit, but allege they are bound by the TRO because plaintiffs were acting in concert with Everett. (Id. at 5-6.)

## II.

**A. Motion to Enjoin State Court Actions (Doc. #9)**

On June 11, 2018, plaintiffs filed an Emergency Motion to Enjoin State Court Actions, requesting that this Court enjoin the Texas state court from moving forward with the case pending before it. (Doc. #9.) Plaintiffs assert that this Court should stay the Texas proceedings because doing so is necessary in aid of the Court's jurisdiction. (Id. at 8.)

The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act, however, "serves as a check on

the broad authority recognized by the All Writs Act." Burr & Forman v. Blair, 470 F.3d 1019, 1027 (11th Cir. 2006). The Anti-Injunction Act provides the following: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The exceptions recognized in the Anti-Injunction Act are narrowly construed. Estate of Brennan ex rel. v. Church of Scientology Flag Serv. Org., Inc., 645 F.3d 1267, 1273 (11th Cir. 2011) (citation omitted). "The Anti-Injunction Act's 'core message is one of respect for state courts,' and it 'broadly commands that those tribunals shall remain free from interference by federal courts.'" SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1335 (11th Cir. 2014) (citations omitted). "The Supreme Court has long emphasized that '[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.'" Id. (quoting Smith v. Bayer Corp., 564 U.S. 299, 306 (2011)) (alteration in original).

The only exception to the Anti-Injunction Act relied upon by plaintiffs is that an order staying the Texas state court proceedings is necessary in aid of this Court's jurisdiction. (Doc. #9, p. 8.) This exception is applicable only in limited

circumstances, including when "(1) the district court has exclusive jurisdiction over the action because it had been removed from state court," "(2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action" and (3) the district court has "retained jurisdiction over complex, *in personam* lawsuits." In re Bayshore Ford Trucks Sales, Inc., 471 F.3d 1233, 1251 (11th Cir. 2006); Juris v. Inamed Corp., 685 F.3d 1294, 1338-39 (11th Cir. 2012).

Plaintiffs contend such an order is necessary in aid of jurisdiction in this case because: (1) Schrenkel and Goede agreed to give Fort Myers state courts and Florida district courts jurisdiction over issues relating to the noncompetition agreements, (2) plaintiffs have no ability to appeal a decision from the Texas case to which they are not parties, and (3) the "first-served" doctrine requires the disputes to be adjudicated in Florida. (Id. at 8-11.) The Court finds that none of these provide a valid basis to interfere with the Texas state court proceedings.

First, the existence of a forum selection clause (or in this case multiple, seemingly inconsistent forum selection clauses) does not impact this Court's jurisdiction. If a party believes the Texas proceedings are contrary to a forum selection clause, an appropriate motion may be filed in that jurisdiction. Forum selection clauses are generally enforced by a motion to transfer

or a motion to stay filed in forum which is entertaining the claims, not a motion to enjoin filed in another jurisdiction in reliance on an exception to the Anti-Injunction Act.

Second, plaintiffs' inability to appeal a state court decision to which they are not parties does not affect this Court's jurisdiction. The plaintiffs are free to seek intervention in the Texas matter under the applicable procedural rules if they believe their interests are affected and they are not adequately represented. This Court's ability to proceed in its case is not affected by this aspect of the Texas litigation.

Third, the "first-served" rule simply does not apply. The first-filed rule applies to parallel litigation proceedings in federal courts, not to proceedings in federal and state courts. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135–36 (11th Cir. 2005) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

The Court finds that plaintiffs have failed to establish an exception to the Anti-Injunction Act sufficient to support enjoining the Texas state court proceedings. The Court therefore declines to exercise its discretion in favor of issuing such an injunction. Plaintiffs' Emergency Motion to Enjoin State Court Actions (Doc. #9) is denied, as is plaintiffs' Motion for Expedited

Telephone Conference with Supplemental Memorandum in Support of Motion to Enjoin. (Doc. #14.)

**B. Motion for Abstention or Stay of this Action (Doc. #11)**

On June 11, 2018, defendants filed a Motion requesting this Court to abstain from hearing this case pursuant to the Colorado River doctrine or, alternatively, stay the case in the interests of judicial economy. (Doc. #11.) Plaintiffs filed a Memorandum in Opposition (Doc. #31) on June 25, 2018. After review, the Court denies this motion.

When dealing with parallel state and federal cases, generally "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." Ambrosia Coal and Constr. Co. v. Page Morales, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colorado River, 424 U.S. at 817 (citation omitted), and "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. at 813.

The Eleventh Circuit utilizes the following factors when considering whether a federal court should abstain from exercising jurisdiction:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

<u>Ambrosia Coal and Constr. Co.</u>, 368 F.3d at 1331 (citation omitted). No one factor is determinative and the weight given to each factor may vary from case to case. <u>Id.</u> at 1331-32.

Defendants assert that each of the relevant factors either weighs in favor of abstention or is neutral. (Doc. #11, pp. 2-3.) Defendants assert that (1) the Delaware action and Florida action involve parallel claims and the filing of the Florida action was for the sole purpose of forum shopping, (2) the Delaware action has proceeded further than the Florida action, and (3) the Delaware court can adequately protect the interests of the parties. (<u>Id.</u> at 3.) The Court finds none of the reasons sufficient to fit within the "slender exceptions to the robust duty to exercise jurisdiction." <u>Abrosia Coal Constr. Co.</u>, 368 F.3d at 1331.

The Delaware and Florida litigation seemingly both relate to the EPA and/or its ancillary agreements, and involve three of the same parties. However, the Florida action also includes an additional party, Hirt, and has claims asserted directly against him. Parallel litigation dealing with similar issues and similar parties is insufficient to support abstention, since this "factor

would seemingly support abstention in every federal case that has a parallel state case" and parties "could always escape federal courts simply by filing parallel state lawsuits." Id. at 1333. Additionally, "the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive and deleterious." Id.  Here, the piecemeal litigation that has occurred is arguably due to the competing forum selection clauses that the parties negotiated and included in their Agreements with each other and does not amount to "abnormally excessive or deleterious." Id.  The Court therefore does not find that this factor supports abstention.

Defendants also assert that the state court action has progressed further than this action. The Delaware action may have progressed slightly further than the Florida action, yet service has not been made in the state court action, and any progress that has been made is not of such a nature that justifies abstention. Defendants also assert that the filing of the Florida action was vexatious and reactive in nature, yet the Florida action was filed closely after the Delaware action, no service had been made in the Delaware action, and at least one agreement sued upon contains a provision that purports to make the Florida court the exclusive jurisdiction for litigating matters related to it.  In their Reply, plaintiffs also assert that the briefing for the Motion to

Dismiss is set to conclude by August and the Judge has granted expedition as to one count of their complaint. (Doc. #47, pp. 4-5.) Even if so, motion to dismiss briefing in this matter is complete or near complete, resulting in these two proceedings progressing at substantially the same pace. The Court finds that one count being deemed expedited does not justify abstention. Therefore the Court does not find that the defendants have established that the filing of the Florida action was vexatious and reactive. The Court also finds that these bases do not support abstention.

Finally, defendants assert that the Delaware court can adequately protect the interests of the parties. While this may be so, there is no indication that this Court is unable of adequately protecting the interests of the parties. If one court happens to move faster than another, then it becomes a matter of <u>res judicata</u>. Therefore this factor does not favor abstention.

Accordingly, defendants' Motion for Abstention or Stay of this Action (Doc. #11) is denied.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Emergency Motion to Enjoin State Court Actions with Incorporated Memorandum of Law (Doc. #9) is **DENIED.**

2. Defendants' Motion for Abstention or Stay of this Action (Doc. #11) is **DENIED.**

3. Plaintiffs' Motion for Expedited Telephone Conference with Supplemental Memorandum in Support of Motion to Enjoin (Doc. #14) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __22nd__ day of August, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record