UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN SCHRENKEL and JOHN
GOEDE,

      Plaintiffs,

v.                    Case No: 2:18-cv-382-FtM-29CM

LENDUS, LLC, RPM HOLDINGS I,
LLC, RPM MORTGAGE, INC., and
ERWIN ROBERT HIRT,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendants LendUS, LLC and RPM Holdings I, LLC's Amended Motion to Dismiss First Amended Complaint (Doc. #16) filed on June 18, 2018. Plaintiffs filed a Response in Opposition to Motion to Dismiss First Amended Complaint (Doc. #28) on June 22, 2018. Also before the Court is defendant Erwin Robert Hirt's Motion to Dismiss First Amended Complaint (Doc. #44) filed on August 3, 2018. Plaintiffs filed a Response in Opposition to Hirt's Motion to Dismiss First Amended Complaint (Doc. #48) on August 17, 2018.

### I. Background

**A. The Parties**

Plaintiffs John Schrenkel and John Goede are the principals

of non-party JDJ Management, LLC.[1]  (Doc. #3, ¶ 5.)  JDJ Management owned non-party American Eagle Mortgage Co., LLC, a company that originated residential mortgages in the United States. (Id. ¶ 23.)

Defendants RPM Mortgage, Inc. and RPM Holdings I, LLC, are divisions of and/or under the control of defendant LendUS, LLC. (Id. ¶¶ 10, 12, 17.)  Defendant Erwin Robert Hirt is the chief executive officer of the defendant entities. (Id. ¶ 14.)

**B. The Equity Purchase Agreement and Amendments**

On June 30, 2016, Defendant RPM Mortgage entered into an Equity Purchase Agreement ("EPA") with JDJ Management and plaintiffs to purchase American Eagle Mortgage. (Id. ¶ 26, p. 27, 31.)  Pursuant to the EPA, some cash was paid at the time of closing, with additional compensation to follow in the form of earn-out payments.  (Id. ¶ 28.)  The EPA also imposed various obligations on the parties, several of which are relevant to this matter.  For its part, RPM Mortgage agreed to assist plaintiffs with a building loan mortgage by using "commercially reasonable efforts" to obtain the release of plaintiffs' personal guarantees on the mortgage.  (Id. ¶ 42, p. 56.)  Plaintiffs, on the other hand, agreed to remain employees of American Eagle Mortgage and enter into employment agreements with RPM Mortgage.  (Id. ¶ 70, p.

---

[1] It appears there was a third principal, David Berry, who is not involved in this litigation. (See Doc. #3, p. 31.)

57.) Both the EPA and the employment agreements required plaintiffs execute non-compete agreements in RPM Mortgage's favor. (Id. ¶ 73, p. 58, 84.)

The EPA contains the following provision regarding the governing law and the forum for litigation:

> 9.7 Governing Law
>
> (a) This Agreement shall be governed by, and construed in accordance with, the Laws of the State of Delaware applicable to contracts executed in and to be performed in that state. **All Actions arising out of or relating to this Agreement shall be heard and determined in the Chancery Court of the State of Delaware or any federal court sitting in the State of Delaware.** Consistent with the preceding sentence, the Parties hereto hereby (i) submit to the exclusive jurisdiction of the Chancery Court in the State of Delaware or any federal court sitting in the State of Delaware for the purpose of any Action arising out of or relating to this Agreement brought by any Party and (ii) irrevocably waive, and agree not to assert by way of motion, defense, or otherwise, in any such Action, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the Action is brought in an inconvenient forum, that the venue of the Action is improper, or that this Agreement or the Contemplated Transactions may not be enforced in or by any of the above-named courts.

(Id. at 66) (emphasis added). The EPA also contains a provision titled "Entire Agreement" which provides:

> This Agreement, including the Disclosure Schedules and Exhibits hereto, and the Ancillary Agreements contain the entire

> agreement and understanding between the
> Parties hereto with respect to the subject
> matter hereof and supersede all prior and
> contemporaneous agreements, negotiations,
> correspondence, undertakings and
> understandings, oral or written, relating to
> the subject matter including the Letter of
> Intent, dated as of March 12, 2016, between
> Seller and Buyer.

(Id. at 67.) The EPA defines "Ancillary Agreements" as "the documents, the instruments and agreements to be executed and/or delivered pursuant to this Agreement or any Ancillary Agreement including without limitation instruments of assignment and assumption, and employment agreements." (Id. at 68.)

The EPA was amended twice in the year following its execution. The first amendment (titled "Amendment and Clarification Agreement") involved the same parties and clarified the EPA's earn-out payments provision. (Id. ¶ 31, pp. 113-20.) The second amendment (titled "Second Amending Agreement") modified the time schedules for remittance of the earn-out payments. (Id. ¶¶ 34-35, pp. 121-23.) The second amendment also replaced RPM Mortgage with LendUSA, LLC as a party to the agreement due to the companies having previously merged.[2] (Id. at 121.) While each amendment made changes to the EPA, neither provided for a new forum-selection clause.

---

[2] The Amended Complaint asserts that defendant LendUS is identified in this second amendment as LendUSA, LLC (Doc. #3, ¶ 34), a position LendUS has not disputed.

**C. The Non-Competition and Non-Solicitation Agreements**

As previously noted, one of the conditions of the EPA was that each plaintiff had to enter into non-compete agreements. (<u>Id.</u> at 58.) On August 1, 2016, each man executed a "Non-competition and Non-solicitation Agreement," which contain the following provisions:

> 9. *Governing Law.* This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of Florida and the federal laws of the United States applicable therein.
>
> 10. *Exclusive Jurisdiction.* **Each of the parties hereto irrevocably consents to the exclusive jurisdiction and venue of any state court in Fort Myers, Florida, or any federal court in Florida in connection with any matter based upon or arising out of this Agreement and the other matters contemplated herein.** Each party agrees not to commence any legal proceedings related hereto except in such courts. By execution and delivery of this Agreement, each party hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and to the appellate courts therefrom solely for the purposes of disputes arising under this Agreement and not as a general submission to such jurisdiction or with respect to any other dispute, matter or claim whatsoever. . . . The parties hereto hereby waive any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing courts on the basis of (a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason, or that it or any of its property is immune from the above-described legal process, (b) that such action or proceeding is brought in an inconvenient forum, that venue for the action or proceeding

> is improper or that this Agreement may not be
> enforced in or by such courts, or (c) any other
> defense that would hinder or delay the levy,
> execution or collection of any amount to which
> any party hereto is entitled pursuant to any
> final judgment of any court having
> jurisdiction.

(Id. ¶¶ 69-70, 73, pp. 161-76; 164, 172) (emphasis added). The

Non-Competition and Non-Solicitation Agreements also directly

refer to the EPA, describing it as the "Acquisition Agreement."

(Id. at 161, 169.)

### D. Litigation

In the years following the EPA, disputes arose among the

parties that ultimately led to plaintiffs' employment being

terminated and litigation commencing in two separate forums. (Id.

¶¶ 44-79, 121-24.)

### 1) Delaware Lawsuit[3]

On March 30, 2018, LendUS filed a lawsuit against plaintiffs

in Delaware state court. (Doc. #1, p. 10-26.) The initial

Delaware complaint alleged several claims, including breach of the

EPA, but did not include any claims based on the non-compete

agreements. (Id.) However, on June 5, 2018, LendUS moved to file

a second amended complaint asserting claims under the Non-

Competition and Non-Solicitation Agreements. (Doc. #9, p. 5.)

---

[3] The Delaware litigation history is being described to
establish the procedural background of the case.

Leave to amend was granted, one count was deemed an expedited claim, and a trial date was scheduled for early October 2018. (Doc. #47, pp. 4-5.)

### 2) Florida Lawsuit

On April 2, 2018, plaintiffs filed a lawsuit in Florida state court seeking a declaration that the non-compete agreements are invalid because LendUS breached multiple provisions of the EPA. (Doc. #2, pp. 1-10.) On May 14, 2018, plaintiffs filed their First Amended Complaint, (Doc. #3), asserting the following state law claims:

| Count Number | Plaintiff(s) | Defendant(s) | Claim Description |
|---|---|---|---|
| One | Schrenkel | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Declaratory Judgment Action under Fla. Stat. § 86.021 |
| Two | Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Declaratory Judgment Action under Fla. Stat. § 86.021 |
| Three | Schrenkel and Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Unpaid Wages under Fla. Stat. § 448.08 |
| Four | Schrenkel and Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Constructive Discharge |
| Five | Schrenkel and Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Retaliatory Discharge under Florida's Private Whistleblower Act, Fla. Stat. § 448.102(3) |

| Six | Schrenkel and Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Breach of Contract |
| Seven | Schrenkel and Goede | Hirt | Piercing the Corporate Veil—Alter Ego |
| Eight | Schrenkel and Goede | Hirt | Tortious Interference with Contractual Relations |
| Nine | Schrenkel and Goede | LendUS, LLC, RPM Mortgage, Inc., and RPM Holdings I, LLC | Unpaid Wages under Fla. Stat. § 448.08 |

(Doc. #3.)

## II. Current Proceedings

On June 1, 2018, LendUS and RPM Holdings removed the Florida state lawsuit to this Court and then filed their Amended Motion to Dismiss. (Doc. #1, 2, 16.) The motion seeks dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim, or, in the alternative, based upon the doctrine of *forum non conveniens*. (Doc. #16, pp. 13-21.) Both arguments rely on the EPA's Delaware forum-selection clause. (Id.) The motion also seeks dismissal of the claims against RPM Holdings I, LLC and RPM Mortgage, Inc. on jurisdictional grounds. (Doc. #16, pp. 21-27.) Because plaintiffs do not oppose dismissal of these parties, (Doc. #28, p. 1 n.2), only the motion's failure to state a

claim/*forum non conveniens* arguments as they relate to defendants LendUS, LLC and E. Robert Hirt need be addressed.

In August 2018, Hirt filed a Motion to Dismiss First Amended Complaint seeking dismissal of the two counts pending against him (Counts Seven and Eight). (Doc. #44, p. 1.) Hirt argues dismissal is required because (1) he is not subject to personal jurisdiction in Florida, (2) the two counts fall within the scope of the forum-selection clause of the EPA and should therefore be dismissed as a failure to state a claim or on *forum non conveniens* grounds, and (3) Count Seven fails to state a claim under Delaware law. (Id. at 2-3.) Each of these motions will be addressed in turn.

**A. LendUS's Motion to Dismiss**

**1) Failure to State a Claim Due to Forum-Selection Clause**

LendUS argues, in part, that plaintiffs' First Amended Complaint should be dismissed under Rule 12(b)(6) or *forum non conveniens* because the EPA's forum-selection clause requires this action be filed in Delaware. (Doc. #16, p. 13.) Plaintiffs respond that dismissal under Rule 12(b)(6) is procedurally inappropriate. (Doc. #28, p. 7.) It is unclear whether Rule 12(b)(6) can be used on forum-selection clauses in this Circuit.

Twenty years ago, the Eleventh Circuit considered "the appropriate vehicle for motions to dismiss on the basis of forum-selection clauses" and determined such motions are properly brought as Rule 12(b)(3) motions to dismiss for improper venue.

Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-90 (11th Cir. 1998). In making this determination, the court recognized that the First Circuit treated motions to dismiss upon the basis of forum-selection clauses as Rule 12(b)(6) motions. Id. at 1290. Although the Eleventh Circuit perceived "no significant doctrinal error in that approach," it nonetheless considered Rule 12(b)(3) the more appropriate vehicle through which to assert a motion to dismiss. Id.; see also Slater v. Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1333 (11th Cir. 2011) ("[W]e conclude that § 1404(a) is the proper avenue of relief where a party seeks the transfer of a case to enforce a forum-selection clause, while Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause.").

In 2013, however, the Supreme Court held that a forum-selection clause cannot be enforced by a Rule 12(b)(3) motion to dismiss. Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Texas, 571 U.S. 49, 52 (2013). Instead, the Supreme Court held that the appropriate procedural vehicles to enforce a forum-selection clause were either a motion to transfer under § 1404(a) (when the clause points to a particular federal district) or a motion to dismiss under the doctrine of *forum non conveniens* (when the clause points to a state or foreign forum). Id. at 59-60. While the Supreme Court expressly declined to consider whether a

defendant could obtain dismissal under Rule 12(b)(6), it did note that even if Rule 12(b)(6) could be used to enforce a forum-selection clause, it would not change the Court's conclusions that § 1404(a) and the *forum non conveniens* doctrine "provide appropriate enforcement mechanisms." Id. at 61.

Since <u>Atlantic Marine</u>, the Eleventh Circuit has not addressed in a published opinion whether Rule 12(b)(6) can be used to enforce a forum-selection clause, and the parties disagree as to the rule's applicability. (Doc. #16, p. 13; Doc. #28, p. 7.) At least two other circuits have held that a Rule 12(b)(6) motion remains a permissible method for enforcing forum-selection clauses. See <u>Podesta v. Hanzel</u>, 684 Fed. App'x 213, 216 (3d Cir. 2017) ("[W]hile Podesta is correct that a party may move under 28 U.S.C. § 1404(a) to transfer a case to another federal court based on a valid forum selection clause, a Rule 12(b)(6) dismissal is also an acceptable means of enforcing such a clause when, as here, the clause allows for suit in either a state or federal forum."); <u>Claudio-De Leon v. Sistema Universitario Ana G. Mendez</u>, 775 F.3d 41, 46 n.3 (1st Cir. 2014) ("[A]bsent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit, and we will not decline to review or enforce a valid forum selection clause simply because a defendant brought a motion under 12(b)(6) as opposed to under § 1404 or *forum non conveniens*.").

Separate from the Rule 12(b)(6) argument, LendUS also argues for dismissal based on *forum non conveniens*. (Doc. #16, pp. 13-19.) As the Supreme Court expressly held that the *forum non conveniens* doctrine was a proper mechanism for enforcing a forum-selection clause, it is unnecessary to decide here whether Rule 12(b)(6) remains a viable procedural vehicle. See Atl. Marine, 571 U.S. at 61 n.4 (noting that even if a motion under Rule 12(b)(6) could be used to obtain dismissal due to a forum-selection clause, "defendants would have sensible reasons to invoke § 1404(a) or the *forum non conveniens* doctrine in addition to Rule 12(b)(6)").

### 2) *Forum Non Conveniens* Doctrine Based on Forum-Selection Clause

The EPA's forum-selection clause requires all actions "arising out of or relating to" the EPA to take place in Delaware, (Doc. #3, p. 66), while the forum-selection clauses of the Non-Competition and Non-Solicitation Agreements require a Florida venue "in connection with any matter based upon or arising out of" the agreements.[4] (Id. at 164, 172.) LendUS asserts that this matter should be dismissed under the doctrine of *forum non conveniens* because the Delaware forum-selection clause in the EPA

---

[4] The Court presumes the forum-selection clauses are valid, see Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009), and none of the parties have made an argument to the contrary.

"trumps" the Florida forum-selection clauses in the non-compete agreements. (Doc. #16, pp. 14-19.) Plaintiffs respond that the forum-selection clauses in the non-compete agreements control because those agreements "form the very basis for this litigation," and the forum-selection clauses therein make Florida a mandatory forum. (Doc. #28, pp. 2-7.)

The Court must first determine which of the conflicting forum-selection clauses applies in this matter. See Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006) ("Where, as here, the two sides have put forth different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide as a matter of law on the agreed facts which forum selection clause governs."). After determining which forum-selection clause applies, the Court can then address the *forum non conveniens* issue. See Lazare Kaplan Int'l Inc. v. KBC Bank N.V., 528 Fed. App'x 33, 35 (2d Cir. 2013) (finding district court erred in proceeding directly to a *forum non conveniens* analysis without first analyzing "the applicability of each forum selection clause to the various aspects of this litigation"); APR Energy Ltd. v. Greenhill & Co., LLC, 220 F. Supp. 3d 427, 429 (S.D.N.Y. Dec. 8, 2016) ("Although styled as a *forum non conveniens* motion, the dispositive issue here is one of contract interpretation: Which forum-selection provision governs

the claims in this case—the English-law clause in the Non-Disclosure Agreement, or the paragraph in the Engagement Letter selecting the courts of New York? . . . The Court must decide this issue before reaching any *forum non conveniens* analysis.").

The enforceability of a forum-selection clause in a diversity case is governed by federal law. <u>Pappas v. Kerzner Int'l Bahamas Ltd.</u>, 585 Fed. App'x 962, 966 n.4 (11th Cir. 2014) (citing <u>P & S Bus. Machs., Inc. v. Canon USA, Inc.</u>, 331 F.3d 804, 807 (11th Cir. 2003)). When confronted with two or more conflicting forum-selection clauses,

> [t]he analysis of which forum selection clause to enforce, or whether to enforce any of them at all, is dependent upon the facts of a particular case. In line with the fact-intensive nature of the analysis, courts have taken varying approaches in determining whether to enforce none or merely one of the forum selection clauses at issue in a given case.

<u>Samuels v. Medytox Sols., Inc.</u>, 2014 WL 4441943, *4-5 (D.N.J. Sep. 8, 2014) (citations omitted). In determining which forum-selection clause to enforce, several courts (including this one) have examined the claims at issue to determine which contract, and therefore which forum-selection clause, applies. <u>See, e.g.</u>, <u>Duffield v. MPC Pipelines, Inc.</u>, 2017 WL 89004, *2 n.2 (D.S.D. Jan. 10, 2017); <u>Nicolais v. Balchem Corp.</u>, 2015 WL 6436747, *5 (E.D. Mo. Oct. 22, 2015); <u>Nvision Biomedical Techs., LLC v. Jalex Med., LLC</u>, 2015 WL 3457678, *2-3 (W.D. Tex. May 29, 2015); <u>Bovie</u>

Med. Corp. v. Livneh, 2010 WL 5297172, *3-6 (M.D. Fla. Dec. 20, 2010); Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente Gmbh, 2009 WL 3675807, *4-9 (N.D. Ind. Nov. 2, 2009).[5]  In line with the analyses in these cases, the Court will examine each of the claims plaintiffs raise against LendUS to determine whether it is based on, arises out of, or relates to the EPA or the non-compete agreement.

### a. Claim-by-Claim Analysis

### i. Count Three Unpaid Wages

In Count Three, plaintiffs allege they earned nearly $3 million in earn-out payments as part of the EPA that were never paid.  (Doc. #3, ¶¶ 108-11.)  As the earn-out compensation was based on a provision of the EPA, the Court finds this claim is based on, arises out of, and relates to the EPA, and therefore the EPA forum-selection clause governs.  See Bailey v. ERG Enters., LP, 705 F.3d 1311, 1317 (11th Cir. 2013) ("A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the

---

[5] While several of these cases addressed conflicting forum-selection clauses in the context of a *forum non conveniens* motion, others were addressing motions to transfer pursuant to § 1404(a) or pre-Atlantic Marine motions to dismiss under Rule 12(b)(3). Nonetheless, the Court finds the analyses in these cases instructive.  See Atl. Marine, 571 U.S. at 60 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system. . . .").

performance of contractual duties.'" (quoting <u>Telecom Italia, SpA</u> <u>v. Wholesale Telecom Corp.</u>, 248 F.3d 1109, 1116 (11th Cir. 2001)).

### ii.  Count Four Constructive Discharge

In Count Four, plaintiffs allege LendUS constructively discharged them "by refusing to pay them what they had earned, threatening to not pay them for future work, and demanding that they commit fraud and misrepresentation." (Doc. #3, ¶ 119.)  As damages, plaintiffs seek lost wages, "including the unpaid earn-out provision wages," as well as future compensation they would have earned. (<u>Id.</u> at 18.)  Determining the amount of compensation owed necessarily involves consideration of the EPA and the employment agreements incorporated therein.  As such, this claim is based on, arises out of, and relates to the EPA, and therefore the EPA forum-selection clause governs.

### iii.  Count Five Retaliatory Discharge

In Count Five, plaintiffs allege they were discharged after objecting to, and refusing to participate in, LendUS's fraudulent activities.[6]  (<u>Id.</u> ¶¶ 121-24, 128.)  Specifically, plaintiffs allege defendants asked them to create a fraudulent $8 million receivable to LendUS to deceive third parties regarding LendUS's

---

[6] Florida law prohibits an employer from taking retaliatory personnel action against any employee because the employee has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." § 448.102(3), Fla. Stat.

financial status, and that their employment was terminated when they refused. (Id. ¶¶ 124-25.) Once again plaintiffs seek damages based upon the EPA's earn-out provision. (See id. ¶ 128) ("In retaliation for Messrs. Schrenkel and Goede's refusal to participate in LendUS' proposed fraud, LendUS wrongfully discharged Messrs. Schrenkel and Goede, failed to pay them over $2.7 million due them under the earn-out provision, and wrongfully denied them the ability to earn the final $622,000 available under the earn-out provision."). Therefore, this claim is based on, arises out of, and relates to the EPA, and therefore the EPA forum-selection clause governs.

### iv.   Count Six Breach of Contract

In Count Six, plaintiffs allege LendUS materially breached the EPA and its amendments by failing to pay them the money owed under the earn-out provisions. (Id. ¶ 132.) By alleging LendUS breached the EPA, plaintiffs have made a claim that is based on and directly arises out of and relates to the EPA, and that agreement's forum-selection clause governs. See Bovie Med. Corp., 2010 WL 5297172, *5 (finding that breach of contract claim fell within the scope of contract's forum-selection clause).

### v.   Count Nine Unpaid Wages

In Count Nine, plaintiffs seek additional unpaid wages, alleging that after their employment was terminated, LendUS reinstated them on April 18, 2018 and restored their previous

salary and benefits. (Doc. #3, ¶¶ 149-50.) However, LendUS has failed to pay them any wages since reinstatement. (Id. ¶ 151.) Unlike the previous counts, plaintiffs do not reference the EPA's earn-out provision in this claim. Nonetheless, the Court finds this claim is based on, arises out of, and relates to the EPA because it requires reference to plaintiffs' "previous salary and benefits" to determine damages. Therefore, the EPA forum-selection clause governs.

### vi.  Counts One and Two Declaratory Judgment

The first two counts of the First Amended Complaint seek a declaration that the Non-Competition and Non-Solicitation Agreements are unenforceable against Schrenkel (Count One) and Goede (Count Two) due to LendUS's breach of the EPA and its amendments. (Doc. #3, ¶¶ 83, 96.) Plaintiffs assert that LendUS (1) failed to compensate them according to the EPA's earn-out payment provision and (2) failed to either negotiate the termination of their personal guarantees on the building loan or refinance the loan to remove their guarantees. (Id. ¶¶ 85-87, 98-100.) These declaratory judgment counts are the only claims in the First Amended Complaint which reference the non-compete agreements.

In arguing that the Florida forum-selection clauses should be enforced, plaintiffs assert that these declaratory judgment claims are the "focal claims" of the First Amended Complaint. (Doc. #28,

p. 4, n.5.) However, the central issue in these claims is whether LendUS breached the EPA. (See Doc. #3, pp. 13, 16) (seeking a declaration that defendants materially breached the EPA and a declaration that the non-compete agreements were therefore not enforceable because of the material breach of the EPA). In fact, plaintiffs' own language in the First Amended Complaint demonstrates these claims "relate" to the EPA. (See id. ¶¶ 91, 104 ("Because LendUS breached the EPA in multiple ways, it cannot benefit from or enforce the Restrictive Covenant Agreements *that are based on the full performance of the EPA transaction*." (emphasis added)); Bailey, 705 F.3d at 1317 ("A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" (quoting Telecom Italia, SpA, 248 F.3d at 1116).

Since the central issue in the declaratory judgment claims at least "relates to" the EPA, the court finds that the claims are primarily "arising out of or relating to" the EPA, and are not "based upon or arising out of" the non-compete agreements. See Buffet, 2009 WL 3675807, *8 ("[I]t appears that the Sale and Purchase Agreement and Assignment will be less significant in determining the outcome of Buffet's claims involving Schreiber's sale of the LE. The central issue in those claims is whether, notwithstanding the parties' agreement in the Assignment or Sale and Purchase Agreement, Schreiber could use the work-in-progress

materials and sell them under its own brand.  Resolution of this question will require interpretation of the Wooden Instruments Agreement, the parties' course of dealing with respect to that agreement, and the Paris court's interim orders with respect to that agreement.  Since the Wooden Instruments Agreement must be construed to determine this central issue, its forum selection trumps the forum selection clauses in the Assignment and Sale and Purchase Agreement.").  Therefore, the Court concludes the EPA's Delaware forum-selection clause governs these counts.

### b. *Forum Non Conveniens* Analysis

Having determined that each of plaintiffs' claims against LendUS fall within the scope of the EPA's forum-selection clause, the Court now proceeds to the *forum non conveniens* analysis.  *Forum non conveniens* allows a court to decline jurisdiction over a case if there is a more convenient forum for the case to be litigated. Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1302 n.4 (11th Cir. 2002).  Typically, to obtain dismissal for *forum non conveniens*, the moving party must demonstrate: (1) an adequate alternative forum is available, (2) public and private factors weigh in favor of dismissal, and (3) the plaintiff could reinstate his suit in the alternative forum without undue inconvenience or prejudice.  See Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001).

However, the Supreme Court has set forth a "modified version" of the *forum non conveniens* doctrine when there is a valid forum-selection clause in a contract. <u>Pappas</u>, 585 Fed. App'x at 964 (citing <u>Atl. Marine</u>, 134 S. Ct. 568, 581-83). Under that version, the burden is on the plaintiff to show that dismissal of the First Amended Complaint is unwarranted, and a court may weigh only public interest factors in determining if a plaintiff has met this burden. <u>Id.</u>; <u>see also</u> <u>GDC Acquisitions, LLC v. Gov't of Belize</u>, 749 F.3d 1024, 1029 (11th Cir. 2014) ("A binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum."). Additionally, a valid forum-selection clause is "given controlling weight in all but the most exceptional cases." <u>Atl. Marine</u>, 571 U.S. at 63 (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 33 (1988)).

Since the EPA contains a valid-forum selection clause applicable to each of the claims against LendUS, plaintiffs bear the burden to show that dismissal of the First Amended Complaint is unwarranted. As noted, only public interest factors may be considered. <u>Atl. Marine</u>, 571 U.S. at 64. Public interest factors include: (1) the administrative difficulties stemming from court congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must

govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Kolawole v. Sellers, 863 F.3d 1361, 1372 (11th Cir. 2017) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).

While plaintiffs briefly argue that the public interest factors "heavily favor" litigation in Florida, (Doc. #28, p. 6), the Court finds this is not one of the rare cases in which a valid forum-selection clause should not be enforced on *forum non conveniens* grounds. See Atl. Marine, 571 U.S. at 64 (noting that because the public-interest factors will rarely defeat a transfer motion, "the practical result is that forum-selection clauses should control except in unusual cases"); GDC Acquisitions, 749 F.3d at 1028 (noting that "an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). Instead, virtually all of the public factors weigh in favor of the enforcement of the choice of forum clause. Therefore, LendUS's motion to dismiss is granted, and Counts One through Six and Count Nine are dismissed without prejudice.

### B. Hirt's Motion to Dismiss

Defendant Hirt's motion seeks dismissal of the piercing the corporate veil (Count Seven) and tortious interference (Count Eight) claims made against him personally. As grounds, Hirt argues (1) he is not subject to personal jurisdiction in Florida, (2) the

claims fall within the scope of the EPA's forum-selection clause, and (3) Count Seven fails to state a claim under Delaware law. (Doc. #44, pp. 2-3.) Because the Court finds the second argument is dispositive, the remaining two will not be addressed.[7]

### 1) *Forum Non Conveniens*

Like LendUS, Hirt argues that the claims against him should be dismissed on *forum non conveniens* grounds because of the EPA's Delaware forum-selection clause.[8]  (Id. at 16-18.)  Plaintiffs respond that the non-compete agreements apply and therefore the Florida forum-selection clauses in those agreements should be enforced.  (Doc. #48, p. 9.)

### a. Applicability of EPA Forum-Selection Clause to Hirt

Prior to addressing the merits of Hirt's claim, it is first necessary to determine whether the EPA's forum-selection clause applies to him.  The EPA was an agreement between RPM Mortgage, JDJ Management, and plaintiffs.  While Hirt was a signatory to the

---

[7] A federal district court may decide a *forum non conveniens* issue prior to resolving a lack of personal jurisdiction issue. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007).

[8] Hirt also argues the claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. #44, p. 13.) However, as discussed previously, whether Rule 12(b)(6) can be used to enforce a forum-selection clause in this Circuit remains an unanswered question.  See supra pp. 9-12.  Therefore, only Hirt's *forum non conveniens* argument will be addressed.

agreement, it was only as a corporate representative.[9]  Hirt now

seeks to enforce the EPA for claims made against him individually.

Plaintiffs do not contest Hirt's ability to rely on the EPA

(although they assert such reliance is misplaced).  Courts in this

Circuit have allowed a business's representative to enforce a

forum-selection clause even when the representative was not a

signatory to the underlying agreement.  See Xena Invs., Ltd. v.

Magnum Fund Mgmt. Ltd., 726 F.3d 1278, 1285 (11th Cir. 2013)

(affirming district court's decision to allow company's "principal

decision maker" to enforce forum-selection clause when company was

a signatory to the agreement containing the clause but he was not);

Elite Advantage, LLC v. Trivest Fund, IV, L.P., 2015 WL 4982997,

*7 (S.D. Fla. Aug. 21, 2015) ("Officers, directors, and

shareholders of signatories to contracts are sufficiently closely

related to the signatories' contracts to enable them to enforce

the contracts' forum selection clauses.").  Similarly, other

courts have bound a corporation's officer to a forum-selection

clause even when the officer signed the agreement containing the

clause only in an official capacity.  See, e.g., Mozingo v. Trend

Personnel Sers., 2011 WL 3794263, *8 (D. Kan. Aug. 25, 2011)

---

[9] In an affidavit filed with his motion to dismiss, Hirt
stated that he signed the EPA in his capacity as chief executive
officer of RPM Mortgage and RPM Holdings, and he "did not execute
the EPA in [his] personal capacity." (Doc. #44-1, p. 25.)

("Bobst occupies a . . . position as president of Trend Personnel and signed the Bonus Agreement in his capacity as its president. Nevertheless, it was, or should have been, foreseeable that the clause might apply to him personally for disputes arising out of the agreement."); <u>Firefly Equities, LLC v. Ultimate Combustion Co., Inc.</u>, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) ("It is clear to the Court that Staroselsky is related to UCC closely enough that he should be bound by the forum selection clause to which he agreed on UCC's behalf. Based on the fact that Staroselsky himself signed the MOU (albeit in his representative rather than individual capacity), it was—or should have been—foreseeable to him that the clause might have application to disputes arising under that agreement that also involved him.").

The Court find that as the chief executive officer of RPM Holdings and RPM Mortgage, Hirt was sufficiently closely related to the EPA to enforce the forum-selection clause. Furthermore, because Hirt was a signatory to the EPA, it was foreseeable any claims related to the EPA made against him individually would fall within the scope of the EPA's forum-selection clause. Therefore, the Court finds Hirt can enforce the EPA's forum-selection clause to the extent the claims made against him fall within the clause's scope.

### b. Claim-by-Claim Analysis

Turning to the merits of Hirt's *forum non conveniens* argument, the Court will conduct the same claim-by-claim analysis undertaken for LendUS's motion to dismiss. See supra pp. 15-20. If the claims arise out of or relate to the EPA, then the Delaware forum-selection clause applies.

### i. Count Seven Piercing the Corporate Veil

In Count Seven, plaintiffs allege that LendUS is "insolvent, severely undercapitalized, and unable to meet financial covenants required by its lenders and counterparties." (Doc. #3, ¶ 135.) Plaintiffs also allege that LendUS and Hirt "failed to observe corporate formalities" and "engaged in financial chicanery" to underreport to plaintiffs the net income generated by American Eagle Mortgage. (Id. ¶¶ 136-37.) Finally, plaintiffs accuse Hirt of committing fraud against creditors and siphoning corporate funds from LendUS "to purchase multiple homes, planes, and cars for his personal use." (Id. ¶¶ 138, 140.) Plaintiffs conclude that LendUS "functioned as a façade for the dominant shareholder," Hirt, and serves as his alter ego. (Id. ¶¶ 139, 141.) Plaintiffs request the Court "disregard the corporate form, pierce the corporate veil, and impose personal liability" on Hirt. (Id. ¶ 142.)

While none of these factual allegations refer directly to either the EPA or the non-compete agreements, it is clear

plaintiffs are seeking to hold Hirt personally liable for damages caused by LendUS's alleged breach of the EPA. In the First Amended Complaint's factual section, which is adopted, incorporated, and re-alleged in each of the nine claims, plaintiffs accuse Hirt of purposefully using money that was intended as payment to them "to fund his own lavish lifestyle, which included private airplanes, multiple homes, and expensive cars." (Id. ¶ 77.) Plaintiffs conclude that "[b]ut for Mr. Hirt's cavalier attitude regarding his use of company money, LendUS would not have faced the cash shortages that ultimately led to the unwillingness and inability to compensate Messrs. Schrenkel and Goede as previously agreed." (Id. ¶ 78.) Plaintiffs also state that after failing to induce them into unethical and fraudulent behavior, Hirt decided plaintiffs "would never be paid the money they were already owed," and restructured the divisional income statement to prevent plaintiffs "from ever being rewarded for the division's efforts in the future." (Id. ¶ 79.) As the "previously agreed" compensation and "the money they were already owed" was determined by the EPA and incorporated employment agreements, plaintiffs are essentially accusing Hirt of causing LendUS to breach these agreements. This conclusion is supported by plaintiffs' request for damages, which is "an amount to be proven at trial but exceeding $2.7 million." (Id. at 22.) As noted previously, $2.7 million is the amount of

compensation plaintiffs allege they are due under the EPA's earn-out provision. (Id. ¶¶ 38, 48.)

Like the declaratory judgment claims, the Court finds that the central issue in this claim is whether LendUS breached the EPA. By plaintiffs' own assertions, Hirt's alleged actions only damaged plaintiffs if they caused LendUS to not pay plaintiffs the compensation owed under the EPA. Because this claim is ultimately based upon the EPA, the Court concludes it arises out of or relates to the EPA. Therefore, the Delaware EPA clause applies.[10]

### ii.   Count Eight Tortious Interference

In Count Eight, plaintiffs claim to have incurred substantial damages caused by Hirt tortiously interfering "with the business and contractual relationships between LendUS and JDJ and Messrs. Schrenkel and Goede." (Id. ¶¶ 145, 147.) Plaintiffs previously accused Hirt of intentionally interfering with the parties' business relationship "by refusing to pay them as promised and causing his subordinates at LendUS to not honor the company's obligations." (Id. ¶ 76.) Once again, it is clear that the

---

[10] Apart from the *forum non conveniens* issue, plaintiffs' piercing the corporate veil/alter ego claim fails to state a claim upon which relief could be granted. See Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 469 n.10 (D. Del. 2010) ("Plaintiffs list 'alter ego' as a separate claim in their complaint. . . . However, '[p]iercing the corporate veil is not itself an independent [] cause of action, but rather is a means of imposing liability on an underlying cause of action." (quoting Peacock v. Thomas, 516 U.S. 349, 354 (1996)).

contractual relationships referenced are the EPA and the employment agreements, which contained the terms of plaintiffs' compensation. As with the previous claim, this determination is supported by plaintiffs seeking an amount exceeding $2.7 million in damages. (Id. at 23.) As plaintiffs are accusing Hirt of tortiously interfering with the EPA, this claim also arises out of or relates to the EPA. Therefore, the Delaware forum-selection clause applies.

### c. *Forum Non Conveniens* Analysis

Having determined both claims against Hirt arise out of or relate to the EPA, the EPA's forum-selection clause will be enforced unless plaintiffs can show that dismissal is unwarranted. See Pappas, 585 Fed. App'x at 964 (citing Atl. Marine, 134 S. Ct. at 581–83). Again, the Court may weigh only public interest factors in determining if plaintiffs have met this burden. Id. While plaintiffs note that they are Florida citizens, doing business in Florida, and seeking to determine their rights under Florida contracts, they also acknowledge that "it should be difficult for either side of this dispute to in good faith characterize the public interest factors as being significantly outside of equipoise." (Doc. #48, p. 11.) The Court agrees and finds the EPA's forum-selection clause should be enforced. Therefore, Hirt's motion to dismiss is granted.

Accordingly, it is hereby

**ORDERED:**

1. Defendant RPM Mortgage, Inc. and RPM Holdings I, LLC are dismissed without objection by plaintiffs. (Doc. #28, p. 1 n.2.)

2. Defendants LendUS, LLC and RPM Holdings I, LLC's Amended Motion to Dismiss First Amended Complaint (Doc. #16) is **DENIED as moot** as to RPM Holdings I, LLC and **GRANTED** as to LendUS, LLC.

3. Defendant Hirt's Motion to Dismiss First Amended Complaint (Doc. #44) is **GRANTED**.

4. The First Amended Complaint is **dismissed without prejudice**.

**DONE AND ORDERED** at Fort Myers, Florida, this 30th day of October, 2018.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record